The STATE of Ohio, Appellee,

v.

SWIERGOSZ, Appellant.

[Cite as *State v. Swiergosz*, 197 Ohio App.3d 40, 2012-Ohio-830.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

Nos. L–10–1013 and L–10–1052.

Decided March 2, 2012.

42

44

Julia R. Bates, Lucas County Prosecuting Attorney, and Ian B. English, Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

YARBROUGH, Judge.

{¶ 1} Defendant-appellant, Michael P. Swiergosz, appeals his convictions for three counts of kidnapping, two counts of rape, aggravated burglary, felonious assault, and having a weapon while under a disability. The Lucas County Court of Common Pleas entered a judgment of sentence on these convictions on February 10, 2010.

{¶ 2} The core facts from the trial record are undisputed. In the early morning of April 28, 2009, Swiergosz broke into a friend's home in Wood County and stole two firearms. One was a Glock semi-automatic pistol loaded with a full magazine, and the other a revolver, later determined to be inoperable. He then drove to his wife's place of employment in the village of Ottawa Hills, a retirement community-home known as Sunset House. An acrimonious divorce was underway, and Swiergosz's wife, Barb, had recently left their home with the couple's four children. Swiergosz entered Sunset House armed with the Glock pistol and a zippered duffel bag containing a hatchet, three rolls of masking tape, scissors, a tire iron, and the revolver. He immediately went to the office of Marilyn Sharkey, one of Barb's co-workers. Sharkey testified that Swiergosz brandished the Glock and told her he would not kill her if she cooperated. Then he ordered her to call Barb to the office. Hearing footsteps near the door, he reached for the tire iron.

{¶ 3} When Barb appeared Swiergosz struck her twice on the head with the tire iron, causing a scalp laceration that bled profusely. Sharkey fled the room as Barb began screaming, and though Barb also started to run, Swiergosz caught her and pulled her into another room. He closed the door and told her to remove her clothes. After she did so, he bound her hands behind her with the tape. From there Swiergosz moved her to a different room with a bed and a bathroom. He testified that he only wanted to talk, but after getting Barb on the bed he removed his clothes and unsuccessfully attempted intercourse. They then went into the bathroom. Swiergosz made Barb sit on the toilet, still bound, and engage briefly in oral sex. But he quickly returned her to the bed where, she testified, forcible intercourse occurred. Shortly afterward, Swiergosz contacted the police by cell phone.

{¶ 4} The record indicates that over 50 officers from three jurisdictions responded to Sunset House and its adjoining grounds. Once the officers determined that Swiergosz was armed and holding Barb hostage and had apparently barricaded himself in one of the rooms, they placed two nearby high schools on lock-down. The residents at Sunset House were evacuated, and additional police units were summoned, including a SWAT team. Although Swiergosz would occasionally speak by cell phone to a sergeant he knew from the Lucas County Sheriff's Office, he kept the officers at bay for approximately six hours. Eventually, Swiergosz released Barb and then surrendered without further incident.

{¶ 5} On May 8, 2009, the Lucas County Grand Jury returned a nine-count indictment against Swiergosz.[1] Before trial, a nolle prosequi was entered on one count of felony intimidation. On January 26, 2010, trial began on the remaining charges, and the jury heard two days of testimony from nine witnesses, including Swiergosz, who testified twice in his own defense. In his first direct testimony, Swiergosz described the estranged relationship with his wife and several incidents that occurred between them in the months preceding his arrival at Sunset House. He was aware that she had a protection order against him with a no-contact provision, but he went there anyway. In the ongoing divorce, he "felt that [his] children were being harmed" by her actions and that he "didn't have any other options." During cross-examination, he claimed he had not intended to hurt anyone with the weapons he brought into Sunset House; rather, he went there for the "singular purpose" of obtaining answers from his wife. He referred to the Glock as "an attention getter." He denied that Barb was ever frightened,

---

1. Following his indictment, a number of pretrial motions were filed, including a motion to suppress Swiergosz's statements to Toledo police officers. After a hearing, this motion was denied. Separate hearings were held to determine Swiergosz's mental competency and to assess the basis for his plea of not guilty by reason of insanity. After these hearings and a court-ordered evaluation, the trial court determined that he was competent to stand trial and failed to meet the legal criteria for insanity. None of these rulings are involved in this appeal.

insisting their intercourse had been consensual. He admitted hitting her with the tire iron "because [he] needed to talk to her [and] wasn't able to talk to her in any other way." He also admitted pleading guilty to an earlier felonious-assault charge involving her.[2] The jury found Swiergosz guilty of all the charges, and he was sentenced to an aggregate prison term of 44 years.

{¶ 6} Swiergosz now assigns four errors for our review. The first assigned error states:

Mr. Swiergosz was deprived of his right to a fair trial, guaranteed by the Constitutions of the United States and the State of Ohio, through prosecutorial misconduct.

{¶ 7} For prosecutorial misconduct, the essential question is whether the behavior complained of deprived the defendant of a fair trial based on the entire record. *State v. Fears*, 86 Ohio St.3d 329, 332, 715 N.E.2d 136 (1999); *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984). In reviewing the alleged misconduct, we look to whether the prosecutor's remarks, questions, or behavior were improper and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14–15, 470 N.E.2d 883 (1984). "[T]he touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 61, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Improper comments or questions will not be the basis for reversal if it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without them. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121.

{¶ 8} In support of this assignment, Swiergosz argues that the prosecutor made "inappropriate comments" during cross-examination that suggested "the jury need not deliberate" on those charges for which he was essentially admitting the facts and therefore his guilt. In particular, Swiergosz complains that the following exchange was prejudicial:

Q. Now * * * it's almost like when you were being asked questions [on direct examination] and you admitted that you pled guilty to the Wood County charge and you pled guilty to the other felonious assault charge and you said you did that because you had done those things; right?

A. Correct.

---

2. On March 10, 2009, Swiergosz discharged a firearm twice at his wife during an altercation. On December 22, 2009, after pleading guilty to this offense, he was sentenced to a prison term of seven years. Separately, Swiergosz later pled guilty to burglary for the firearms taken from the Wood County residence. The common pleas court sentenced him to a one-year prison term.

Q. Any of the charges that you're facing here that you're guilty of in your mind?

A. Yes.

Q. Like what?

A. The word—the felonious assault. I did strike my wife.

Q. Okay. So you heard during voir dire how each offense is broken down into what we call elements that have to be proven beyond a reasonable doubt?

A. Yes.

Q. And I said to the jury that their job is to decide the essential disputed questions of fact and that maybe not every fact would be in dispute. So you admit that you did cause physical harm to your wife that day; right?

A. Yes.

Q. So they don't even have to worry about that offense; right? I mean, they can just write guilty? They don't have to debate it because you're admitting to it; right?

A. I have.

Q. Now, another thing that you're charged with are these firearm specifications that say that you had a firearm on or about your person or under your control. And you have—and we'll talk about what a firearm is. But you're not denying you had that gun; right?

A. No.

Q. It was on your person; yes?

A. Yes.

Q. It was under your control; correct?

A. Yes.

Q. And you had it while you were committing the felonious assault, which is a felony offense; right?

A. Yes.

Q. And you've stipulated that the Glock worked, it could fire a projectile, so that means it's operable. So you're also guilty of each of those firearm specifications; agreed?

A. I did not stipulate that it worked. I never fired that gun.

Q. No. The question is the jury has to determine whether that firearm was operable, whether it could have fired a bullet. And you stipulated to the admissibility of the TPD test-fire report that said yes, this gun works, all right, so they don't have to—that's not [a] disputed question of fact; is it? They can just write guilty on those firearm specifications because you admit that; right? I mean you want to be honest about the things you did, don't you?

A.   Sir, I don't know the law, but if what the specification is attached to, if I didn't do it there wouldn't be a firearm spec to that.   I—

Q.   Is that your way of saying yeah, you had a working handgun and you don't deny it?

A.   I've answered that several times, yes.

{¶ 9} The prosecutor similarly questioned Swiergosz about having the Glock with him at Sunset House in relation to the separate weapons-disability charge.

Q.   Okay.   Now, you're also charged with having weapons under a disability, which means you had a working handgun and at the time that you possessed it you were under indictment for a felony offense and that would be the felonious assault charge of March 10th;  right?

A.   [Nodding].

Q.   Correct?

A.   Yes.

Q.   And so you admit that you're guilty of that offense too, don't you?

A.   Yes.

Q.   So these folks don't have to spend any time, they can just go in, sign that verdict form as guilty;  right?

A.   Yes.

{¶ 10} Defense counsel did not object to these questions.   This forfeits all but plain error under Crim.R. 52(B).   *Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, at ¶ 77.   Swiergosz, however, has not bothered to argue that the questioning was plain error.   Instead, his appellate brief simply asserts that "coercing admission[s] from the unwitting defendant" during cross-examination constituted the misconduct.   He then speculates how the jury might have decided these charges without such questioning.   Regardless, for there to be "plain error," there first must be error and, second, the error must be "obvious." *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16. Neither is present here.

{¶ 11} In voluntarily taking the stand twice, Swiergosz waived his right against self-incrimination and subjected himself to proper cross-examination. *State v. Roten*, 149 Ohio App.3d 182, 2002-Ohio-4488, 776 N.E.2d 551, ¶ 12. There is no basis for predicating error on a robust or even rough cross-examination if the prosecutor's questioning is otherwise within the scope of what is permitted.   *See* Evid.R. 611(B);  *State v. Smith*, 80 Ohio St.3d 89, 111, 684 N.E.2d 668 (1997);  *see also State v. Jones*, 2d Dist. No. 20349, 2005-Ohio-1208, 2005 WL 628233, ¶ 36.

{¶ 12} The prosecutor's initial questioning focused on facts that Swiergosz had already testified to, or admitted, on direct examination, such as the Wood County burglary and the March 2009 shooting incident. *See Smith* at 111. The questions were plainly intended to clarify which elements of the crimes he was not disputing. Frankly, the questions asked were neither particularly aggressive nor unfair, given what Swiergosz said during his direct testimony: he admitted striking his wife; he acknowledged having the Glock on him while committing that crime; and he conceded being armed while under indictment for shooting at her six weeks earlier. The jury simply took him at his word.[3]

{¶ 13} In arguing that these lines of cross-examination prejudiced him, Swiergosz cites *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234. *Durnwald*, however, actually supports the state's position. There, we rejected a defendant's attempt to predicate reversible error on the prosecutor's in-court request that he "demonstrate his ability to perform the one-leg [field sobriety] test," because that request was *"in response to appellant's comment* that he would do as well in court as he had on the night of his arrest." (Emphasis added.) *Id.* at ¶ 55. In other words, where the defendant in his direct testimony opens the door with assertions or even concessions that are reasonably likely to invite queries on cross-examination, he can hardly complain when the prosecutor accepts that invitation and comes through the door. *State v. Bennett*, 2d Dist. No. 15854, 1997 WL 282314 (May 30, 1997), citing *State v. Pollard*, 21 Ohio St.2d 171, 174, 256 N.E.2d 620 (1970).

{¶ 14} Here, the prosecutor was not—as in the classic misconduct scenario— injecting his personal opinion about Swiergosz's guilt during closing argument. We note that the phraseology of the questions asked on cross-examination did not recur in the prosecutor's closing statements. But even if we assume that there was error in allowing some questions, or assume that some were improper in their form, such error was cured when the trial court instructed the jury on the state's duty to prove all elements of the crimes charged beyond a reasonable doubt and then gave the specific charge defining reasonable doubt. *State v. Lundgren*, 73 Ohio St.3d 474, 484, 653 N.E.2d 304 (1995) ("the court's reasonable-doubt instructions negated any misconception by the jury").

{¶ 15} For another reason, however, that does not end the analysis. After leaving the stand following this cross-examination, Swiergosz complained to the court in chambers that his attorney's initial questioning was too limited. The

---

3. During cross-examination about the March incident, Swiergosz offered a nuanced distinction between shooting *"at"* his wife and shooting *"in close proximity"* to her. Whether this subtlety eluded the jury or was merely a distinction without a difference is not something the record reveals. But as counsel for Swiergosz concedes, "his testimony was the most damning evidence against him."

jury, he insisted, had not "heard the whole story" about a litany of matters relevant to his defense, all occurring before his crimes at Sunset House. He prevailed on the court to allow him to retake the stand for yet more testimony. Predictably, the prosecutor had no objection. What then followed was a long and emotional monologue to the jury in which Swiergosz discussed his gambling addiction, his failed mortgage business, the couple's personal finances, the foreclosure of their home, his relationship with his children, his in-laws, the protection order against him, how Barb "used sex as a weapon," and the effect of the pending divorce on his mental state. There were bitter recriminations involving the draining of bank accounts and Barb hiding cash she received at her baby shower. He claimed she was mentally abusing the children. The March 10 shooting, he told the jury, was prompted by Barb's desire to reclaim the family van from their home. The van was titled in his name, but she had always used it. With a pistol tucked inside his waistband for deterrence, he confronted Barb in the driveway. Immediate possession was disputed. He said, "I'm taking the van." She yelled, "You're not getting the van," and she then ran toward it. Shots were fired twice. Barb was neither fearful for her safety nor deterred, Swiergosz explained, for despite the gunfire and some shoving and kicking at the driver's side door, she got in the van anyway. Barb's kick to his face had "loosened a tooth," so he punched hers in return. At that point, a standoff ensued—he holding the gun out, she in the driver's seat glaring back. As police arrived, he retreated into the house.

{¶ 16} To this lengthy narrative there was, predictably, no objection. When it concluded, the prosecutor rose and asked but two innocuous questions. Neither repeated anything asked in the first cross-examination. On this record, the resolution suggests itself: whatever error might have occurred during Swiergosz's first visit to the witness stand was certainly remediated by his second visit. Moreover, having failed to identify any "obvious error," Swiergosz cannot reach the final requirement for plain error, *i.e.,* showing prejudice to a substantial right that is outcome determinative. *State v. Gardner,* 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 78.

{¶ 17} Accordingly, the first assigned error is not well taken.

{¶ 18} The second assigned error states:

Mr. Swiergosz was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I Section 10 of the Ohio Constitution.

{¶ 19} In this assignment, Swiergosz argues, in two parts, that defense counsel's failure to file pretrial motions in limine against certain evidence in the state's case-in-chief demonstrates that counsel was ineffective. In the first part, he maintains that his counsel erred in not moving to exclude evidence of the

March 10 incident. He argues that it was "extrinsic to the operative facts of the underlying charge" at trial and was purely "other-acts evidence" for which no exception applied under Evid.R. 404(B). In the second part, citing Evid.R. 403(A), he argues that counsel should have moved to exclude testimony about the school lockdowns and the call-out of the SWAT team to Sunset House. This testimony, he urges, was irrelevant and unfairly prejudicial. We find both arguments unconvincing.

{¶ 20} A claim of ineffective assistance of counsel is evaluated under the deficiency standard set forth in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶ 21} In Ohio, a licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. As an initial matter, defense counsel is not obligated to file every possible pretrial motion, nor to cross-examine every witness the prosecution calls, nor to object to every question asked the defendant if he testifies in his own defense. *State v. Otte*, 74 Ohio St.3d 555, 565, 660 N.E.2d 711 (1996). All such decisions fall within the ambit of trial strategy, and even debatable tactics or maneuvers do not demonstrate ineffectiveness. *State v. Barnhart*, 6th Dist. No. H–10–005, 2011-Ohio-2693, 2011 WL 2174989, ¶ 44.

{¶ 22} Second, a motion in limine functions as a precautionary device to avoid error, prejudice, and possibly a mistrial by prohibiting opposing counsel from raising or making reference to an evidentiary issue until the trial court is better able to rule upon its admissibility * * * once the trial has commenced. *State v. Grubb*, 28 Ohio St.3d 199, 201, 503 N.E.2d 142 (1986). The propriety of moving in-limine is both issue and fact dependent and will necessarily differ from case to case. There can be no bright-line rule that signals when failing to file such a motion is per se ineffective lawyering. In the context of overall trial strategy, the decision is a matter committed to counsel's professional judgment. Counsel's only duty is to make his own appraisal of the case and then decide when—or *if*—such a motion is worth filing. *State v. Vires*, 25 Ohio App.2d 70,

266 N.E.2d 245 (1970). Given the tentative and interlocutory nature of all in-limine motions, an ineffective-assistance claim based on the decision not to file one bears a stringent burden of demonstrating prejudice. *State v. Toney,* 9th Dist. No. 04CA0013, 2004-Ohio-4877, 2004 WL 2050502, ¶ 13; *State v. Giddens,* 3d Dist. No. 1–02–52, 2002-Ohio-6148, 2002 WL 31525379, ¶ 29–30.

{¶ 23} Swiergosz's claim that any reference to the March 10 shooting was excludable under Evid.R. 404(B) is plainly untenable. It was not offered "to prove the character of a person in order to show that he acted in conformity therewith." Typically, under this rule, the issue is whether the testimony is offered to show, or tends to show, motive, opportunity, plan, or intent. If so, it is admissible. But the enumerated purposes in Evid.R. 404(B) do not exhaust the reasons for admitting other-acts evidence. When the act comprising the other-act evidence is itself criminal conduct that is "so blended or connected with the act on trial" that proving the former is logically required "to prove an element of the crime charged," it is admissible. *State v. Hernandez,* 6th Dist. No. L–06–1388, 2009-Ohio-386, 2009 WL 223882, ¶ 32, citing *State v. Roe,* 41 Ohio St.3d 18, 23–24, 535 N.E.2d 1351 (1989); *State v. Smith,* 49 Ohio St.3d 137, 139–140, 551 N.E.2d 190 (1990); *State v. Watson,* 28 Ohio St.2d 15, 21, 275 N.E.2d 153 (1971) (other-acts evidence may be used to establish possession of a weapon, when possession of a weapon is an element of the crime).

{¶ 24} Given that Swiergosz was charged with the offense of having a weapon while under a disability in violation of R.C. 2923.13, the state had to prove the necessary "disability" element. When Swiergosz armed himself with the Glock on April 28, 2009, before heading to Sunset House, that disability consisted of being under indictment for the felonious assault of March 10, 2009. *See* R.C. 2923.13(A)(2). Hence, proof of the disability did not constitute improper propensity evidence—notwithstanding that Swiergosz volunteered the minutiae of that incident in his own testimony.

{¶ 25} Under Evid.R. 403(A), Swiergosz claims prejudice from the testimony about the lockdowns and the SWAT team. Even a cursory analysis, however, would not suggest inadmissibility. Crime does not occur in a vacuum. All contextual testimony that the jury hears that explains the wider "story" or circumstances beyond the immediate facts of the crime will invariably carry some prejudice—in the sense that this larger story will rarely make the defendant look good. Such testimony is nonetheless relevant in helping the jury understand the defendant's alleged actions, whom they affected, and what issues they are there to decide.[4]

---

4. The Supreme Court of Ohio has expressed the same point this way: "As a legal term, 'prejudice' is simply '[d]amage or detriment to one's legal rights or claims.' Black's Law

{¶ 26} And here there is little doubt that the jury's estimation of Swiergosz was not measurably improved by what it heard. The authorities reacted with extreme caution on learning that he was armed and barricaded, and they treated very seriously the implications of his assaultive behavior. That, however, did not make the testimony inadmissible. "Incriminating" does not equal "unfair prejudice" under Evid.R. 403(A). *State v. Turner*, 9th Dist. No 24709, 2009-Ohio-6613, 2009 WL 4829881, ¶ 14–16 (contextual testimony about barricaded suspect with felony warrants, possession of illegal weapons, and call-out of SWAT team not unfairly prejudicial). The gravity of Swiergosz's actions had rippling effects beyond Sunset House. They precipitated certain responses that the police witnesses described. The probative value of this testimony was not *substantially* outweighed by unfair prejudice, the calculus required under Evid.R. 403(A). We find no error in the jury's having heard it.

{¶ 27} As Swiergosz has not met his burden of showing how he was prejudiced by counsel's failure to file an in-limine motion as to either issue, his ineffective-assistance claim necessarily fails. *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus. Accordingly, the second assigned error is not well taken.

{¶ 28} The third assigned error states:

The trial court committed error when it failed to apply the appropriate allied-offenses test in determining whether Mr. Swiergosz's convictions merged.

{¶ 29} Swiergosz was sentenced on February 8, 2010. His notice of appeal was filed on February 22, 2010. When he was sentenced, *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), governed the analysis for determining the merger of allied offenses of similar import under R.C. 2941.25(A). On December 29, 2010, the Ohio Supreme Court overruled *Rance* and announced a new standard in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 44.

{¶ 30} A review of both the sentencing transcript and the court's sentencing entry indicates that the court ordered concurrent prison terms for the convictions of aggravated burglary (count 1), kidnapping of Marilyn Sharkey (count 2), and weapons-disability (count 8). As well, the prison terms for the two kidnapping convictions involving Swiergosz's wife (counts 4 and 5) were made concurrent. Of

---

Dictionary (8th Ed.1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence—to do so would make reaching any result extremely difficult. Rather, only evidence that is *unfairly* prejudicial is excludable." (Emphasis sic.) *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23.

the seven firearm specifications, the court explicitly merged all but two, imposing consecutive three-year terms on counts 2 and 3.

{¶ 31} Swiergosz now asks us to remand this case for resentencing "so the trial court can engage in the necessary analysis when imposing sentence." He asserts that "there is nothing in the record to suggest that the court" used *Johnson* in determining which offenses to merge at sentencing. The state describes this argument as nonsensical given the timing, and it is true that without a crystal ball on February 8, the sentencing court could not have anticipated *Johnson*. Yet except for the firearms specifications, nothing in the sentencing transcript indicates that the court explicitly assessed any of the offenses for merger even under *Rance*.

{¶ 32} The state also contends that this issue has been "waived" (or, more correctly, *forfeited*) because defense counsel did not challenge the court's failure to conduct a merger analysis. However, that only renders the issue reviewable for plain error under our discretionary power. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Richcreek*, 6th Dist. No. WD–09–072, 2011-Ohio-4686, 2011 WL 4344101, ¶ 65. And it is now clearly established law that imposing multiple sentences for allied offenses constitutes plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31; *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 96–102 (failure to merge allied offenses is plain error). Thus, on this issue, Swiergosz did not forfeit his right to assign error.

{¶ 33} Although Swiergosz was sentenced ten months before *Johnson* was decided, his appeal was pending in this court. Because a new judicial ruling applies to a conviction that has not become final, *Johnson*'s new analysis applies to his case. See *Ali v. State*, 104 Ohio St.3d 328, 2004-Ohio-6592, 819 N.E.2d 687, ¶ 7 (conviction becomes final when the defendant has exhausted all his appellate remedies); *see also State v. Greene*, 6th Dist. No. S–03–045, 2004-Ohio-3456, 2004 WL 1468539, ¶ 10 (where the defendant can no longer pursue any appellate remedy, his conviction is final, and "any new case law cannot be applied retroactively even if it would be relevant to the facts of his case").

{¶ 34} Where multiple allied counts exist, the trial court's duty to merge these counts is mandatory, not discretionary. *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 26. Thus, "[a] sentence that contains an allied-offenses error is contrary to law." *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 14. Under R.C. 2941.25, the sentencing court has a duty in the first instance "to determine whether the offenses are allied, and if they are, to convict the defendant of only one offense." *Underwood* at ¶ 29. This assessment must be made "prior to sentencing." *Johnson*, 128 Ohio St.3d

153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 47. The requirement to determine merger carries constitutional implications because the concept has its inception in the double-jeopardy protection against cumulative punishments grounded in those clauses of the United States and Ohio Constitutions. *Johnson* at ¶ 45; *State v. Williams,* 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, ¶ 12.

{¶ 35} R.C. 2941.25 states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 36} In the syllabus of *Johnson,* the Ohio Supreme Court held:

{¶ 37} "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered."

{¶ 38} Although *Johnson* was a plurality opinion, its merger analysis requires, at a minimum, that two questions be answered. The first is "whether it is *possible* to commit one offense and commit the other with the same conduct, *not* whether it is possible to commit one without committing the other." (Emphasis added.) *Id.* at ¶ 48. This is a purely logical exercise. The inquiry is whether in the same conduct both offenses *could be* committed. *Johnson* emphasizes that it is not necessary that committing one offense will *always* result in committing the other. "It is a matter of possibility, rather than certainty." *Id.,* quoting *State v. Blankenship,* 38 Ohio St.3d 116, 119, 526 N.E.2d 816 (1988).

{¶ 39} Second, "[i]f the multiple offenses *can be* committed by the same conduct, then the court must determine whether the offenses *were committed* by the same conduct, i.e., 'a single act, committed with a single state of mind.'" (Emphasis added). *Id.* at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50. This second question is a fact-based inquiry into what the defendant intended to do (animus or immediate motive) and *did do,* in committing the offenses.

{¶ 40} *Johnson* requires that "[i]f the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id.* However, if the sentencing court "determines that the commission of one offense

will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." (Emphasis sic.) *Id.* at ¶ 51. Although a defendant may have a single goal, if he commits multiple offenses, or even the same offense, against different victims during the same course of conduct, the offenses are not allied and could be separately punished. *See, e.g., State v. Mitchell,* 6th Dist. No. E–09–064, 2011-Ohio-973, 2011 WL 766547, ¶ 41; *State v. Snuffer,* 8th Dist. No. 96480, 2011-Ohio-6430, 2011 WL 6245774, ¶ 4. Yet where the defendant's conduct is such that a single act could lead to the commission of separately defined offenses, but those separate offenses were committed with a state of mind to commit only one act, the offenses are allied and must be merged for sentencing.[5]

{¶ 41} The state argues that Swiergosz's receipt of concurrent sentences for certain offenses resulted in the "same outcome" as if they had been merged. But that argument simply begs the question. No merger analysis was done even under *Rance,* and the "same outcome" may or may not obtain under *Johnson.* That determination remains to be made. But even if it did, the Supreme Court in *Underwood* rejected the argument that there is "no practical or prejudicial effect" in failing to determine merger if the defendant receives concurrent sentences. *Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31. There, the trial court had convicted the defendant of multiple counts of aggravated theft and theft, but ordered "all sentences to be served concurrently for an aggregate sentence of two years." *Id.* at ¶ 6. *Underwood* held that "even when the sentences are to be served concurrently, a defendant is prejudiced by having more convictions that are authorized by law." *Id.* at ¶ 31.

{¶ 42} Imposing concurrent sentences does not cure the failure to determine merger, for the concept operates to preclude *multiple* sentences for conduct giving rise to allied offenses. That prohibition is found in R.C. 2941.25(A). "Because a defendant may be convicted of only one offense for such conduct, the defendant may be *sentenced for only one offense.*" (Emphasis added.) *Underwood* at ¶ 26. The statutory mandate that only one "conviction" result from allied offenses is a restriction "against *sentencing* a defendant for more than one allied offense." (Emphasis added.) *State v. Whitfield,* 124 Ohio

---

5. This was the result in *Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The defendant had beaten the same seven-year-old victim twice, with the beatings only briefly separated in time. The court deemed the two beatings to be a single "discreet act" that resulted in both the commission of felony murder and child endangering. Noting that the endangering offense formed the predicate crime for the homicide, *Johnson* found that the state had relied on the same conduct to prove both offenses. Felony murder and child abuse were thus allied offenses and should have been merged. *Id.* at ¶ 53–57.

St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 26; *see also State v. Gibson,* 8th Dist. No. 92275, 2009-Ohio-4984, 2009 WL 3043980, ¶ 29 ("Imposition of multiple sentences, even concurrent ones, for allied offenses of similar import is plain error").

{¶ 43} Under R.C. 2941.25, a "conviction" consists of a guilty verdict *and* the imposition of a sentence or penalty. *Whitfield* at ¶ 12. Because Swiergosz is entitled to a merger determination under *Johnson* for the offenses of which he was found guilty, this case will be remanded for that purpose, and following that, resentencing; however, the remand affects only the sentences, not the jury's guilt determinations. Those remain intact and are not subject to review. *Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 15; *Whitfield* at ¶ 26–27.[6]

{¶ 44} Additionally, while most of the firearms specifications were merged, this is of no consequence under R.C. 2941.25 to assessing the underlying *offenses.* A firearms specification is not "allied" to the underlying crime because the specification is a *penalty enhancement,* not a criminal offense. *State v. Ford,* 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, ¶ 19 ("Penalties for a specification and its predicate offense do not merge under R.C. 2941.25").

{¶ 45} Accordingly, the third assigned error is well taken.

{¶ 46} The fourth assigned error states:

The trial court committed error in failing to specify whether the sentence on count six was to be served consecutively or concurrently.

{¶ 47} Swiergosz attempts to base error on a *verbal* misstatement by the court during sentencing. While this assignment is technically moot due to the disposition of the preceding assignment, it alleges the kind of "error" that is capable of repetition on remand, so we will address it now.

{¶ 48} In pronouncing sentencing, the court failed to specify whether the prison time on count 6 was to be served concurrently or consecutively. The court inadvertently omitted count 6, stating, "[t]he *remaining* counts, counts 3, 4, and 7, are to be served consecutively to all other counts and consecutively to each other." However, in the judgment entry of sentence, the court stated: "The

---

**6.** In this assignment, neither party has properly briefed or argued which of the eight offenses, if any, should be merged under *Johnson* for sentencing purposes. Notwithstanding that, the correct procedure is to vacate the sentences and remand for resentencing. *Wilson* at ¶ 12–15; *Whitfield* at ¶ 22–26; *State v. Caston,* 6th Dist. No. E–09–051, 2010-Ohio-6498, 2010 WL 5550681, ¶ 51–52. We also note that appeals involving pre-*Johnson* sentences from the Fifth, Eleventh, and Twelfth Appellate Districts have been similarly remanded for a merger/allied-offense determination and resentencing under *Johnson. See, respectively, State v. Small,* 5th Dist. No. 10CA110088, 2011-Ohio-4086, 2011 WL 3612206; *State v. May,* 11th Dist. No. 2010–L–131, 2011-Ohio-5233, 2011 WL 4842452; *State v. Blanda,* 12th Dist. No. 2010–03–050, 2011-Ohio-411, 2011 WL 332725.

sentences imposed in count three, count six, and count seven are ordered to be served consecutively to each other and are ordered to be served consecutively to the sentences imposed in count one, count two, count four, count five, and count eight."

{¶ 49} Arguably, by saying "the *remaining* counts" in its verbal rendition of sentence, the court did intend to include count 6. But as the state correctly notes, a sentencing court speaks only through its judgment entry of sentence, not its oral pronouncements. *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 47. We have previously held that verbal miscues or misstatements in open court during sentencing are harmless. *State v. Woody*, 6th Dist. No. OT–05–012, 2006-Ohio-1624, 2006 WL 832910, ¶ 11.

{¶ 50} Accordingly, the fourth assigned error is not well taken.[7]

{¶ 51} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed in part and reversed in part, the sentences are vacated, and this matter is remanded for a new sentencing hearing to determine the merger of offenses under *Johnson* and for resentencing. Pursuant to App.R. 24(A)(4), costs are to be divided equally between the parties.

Judgment affirmed in part
and reversed in part,
and cause remanded.

PIETRYKOWSKI and OSOWIK, JJ., concur.

---

7. Given that counsel for Swiergosz also cites no authority for the assertion that a verbal misstatement alone requires a remand for resentencing when the sentencing entry is otherwise correct, this assignment could be disregarded for that reason. *See Ottawa Hills v. Afjeh*, 6th Dist. No. L–04–1297, 2006-Ohio-2618, 2006 WL 1449819, ¶ 67; *see also* App.R. 12(A)(2) and 16(A)(7).