[Cite as *State v. Stanifer*, 2017-Ohio-2721.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**GEAUGA COUNTY, OHIO**


STATE OF OHIO,                                  :          **O P I N I O N**

            Plaintiff-Appellee,          :

                                  **CASE NO. 2016-G-0085**

      - vs -                                        :

MINDIE MOCK STANIFER,                 :

            Defendant-Appellant.        :


Criminal Appeal from the Geauga County Court of Common Pleas, Case No. 2015 C 000194.

Judgment:  Affirmed.


*James R. Flaiz,* Geauga County Prosecutor, and *Christopher J. Joyce,* Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH  44024  (For Plaintiff-Appellee).

*Anna Markovich,* 18975 Villaview Road, Suite 3, Cleveland, OH  44119 (For Defendant-Appellant).


COLLEEN MARY O'TOOLE, J.

{¶1}   Appellant, Mindie Mock Stanifer, appeals from the July 11, 2016 judgment of the Geauga County Court of Common Pleas, sentencing her to a total of 18 years in prison for involuntary manslaughter, kidnapping, and obstruction of justice, following a guilty plea.  On appeal, appellant takes issue with her sentence.  Finding no error, we affirm.

{¶2} Two victims, Daniel Ott and Mary Anne Ricker, were awoken in the early morning hours by Chad South who had broken into their Geauga County home in 2006. Mr. South bound both victims with duct tape. Mr. Ott managed to break his bonds and chased after Mr. South. Mr. South shot Mr. Ott in his chest. Mr. Ott later died. Mr. South immediately left the residence and jumped into the getaway car, where appellant was waiting.

{¶3} While in prison on an unrelated crime, Mr. South indicated he had been hired by Joseph Rosebrook to kill "Dan Ott." Mr. South commented, however, that he had killed the wrong "Dan Ott." Mr. South expressed worry over the murder for hire and worry about "the girl in the car," i.e., appellant. Detectives ultimately found appellant in Florida in 2014.

{¶4} Appellant initially denied any involvement in the murder for hire plot and claimed she did not know Mr. South. However, appellant later confessed that she was in the vehicle when Mr. South committed the murder and that she saw him come back to the car covered in blood. Appellant claimed she was on drugs at the time and that she accompanied Mr. South to what she believed was a burglary in order to maintain her drug habit.

{¶5} On December 8, 2015, appellant was indicted by the Geauga County Court of Common Pleas on nine counts: count one, conspiracy, a felony of the first degree, in violation of R.C. 2923.01(A); count two, aggravated murder, an unclassified felony, in violation of R.C. 2903.01(A), with a firearm specification; count three, aggravated murder, an unclassified felony, in violation of R.C. 2903.01(B), with a firearm specification; counts four and five, kidnapping, felonies of the first degree, in

2

violation of R.C. 2905.01(A)(2), with firearm specifications; and counts six through nine, obstruction of justice, felonies of the third degree, in violation of R.C. 2921.32(A)(6). Appellant was represented by counsel and entered a not guilty plea at her arraignment.

{¶6} Thereafter, on May 9, 2016, appellant changed her plea and entered an oral and written plea of guilty to involuntary manslaughter, a felony of the first degree; kidnapping, a felony of the second degree; and two counts of obstruction of justice, felonies of the third degree. The trial court accepted appellant's guilty plea and dismissed the remaining charges.

{¶7} On July 11, 2016, the trial court sentenced appellant to the following: for involuntary manslaughter, a felony of the first degree, in violation of R.C. 2903.04(A), and being a stipulated lesser included offense of the offense as charged in count two of the indictment, a prison term of eight years, with five years of post-release control; for kidnapping, a felony of the second degree, in violation of R.C. 2905.01(A)(2), as charged in count four of the indictment, a prison term of six years in prison, with three years of post-release control; for obstruction of justice, a felony of the third degree, in violation of R.C. 2921.32(A)(6), as charged in count six of the indictment, 18 months in prison, with up to three years of post-release control; and obstruction of justice, a felony of the third degree, in violation of R.C. 2921.32(A)(6), as charged in count nine of the indictment, a prison term of 30 months in prison, with up to three years of post-release control. The trial court ordered the foregoing periods of incarceration to be served consecutively for a total of 18 years in prison, with 322 days of credit for time served. Appellant filed a timely appeal and asserts the following two assignments of error:

3

{¶8} "[1.] Appellant's sentences are contrary to law because the trial court's findings under R.C. 2929.14(C)(4), R.C. 2929.11 and 2929.12 are not clearly and convincingly supported by the record.

{¶9} "[2.] The trial court erred by convicting and sentencing appellant to consecutive sentencing on allied offences of similar import."

{¶10} In her first assignment of error, appellant argues her sentences are contrary to law because the trial court's findings under R.C. 2929.14(C)(4), 2929.11 and 2929.12 are not clearly and convincingly supported by the record.

{¶11} "'(T)his court utilizes R.C. 2953.08(G) as the standard of review in all felony sentencing appeals.' *State v. Hettmansperger,* 11th Dist. Ashtabula No. 2014–A–0006, 2014–Ohio–4306, ¶14. R.C. 2953.08(G) provides, in pertinent part:

{¶12} "'(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶13} "'The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶14} "'(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section

4

2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶15}** "'(b) That the sentence is otherwise contrary to law.'

**{¶16}** "R.C. 2929.14(C)(4) governs the imposition of consecutive felony sentences. It provides:

**{¶17}** "'(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

**{¶18}** "'(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

**{¶19}** "'(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶20}** "'(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.'

5

**{¶21}** "In *State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, ¶37, the court held:

**{¶22}** "'In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings. Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry.'

**{¶23}** "Failure to make the R.C. 2929.14(C)(4) findings at the sentencing hearing and incorporate them in the judgment entry of sentence renders the sentence contrary to law. *See, e.g., id.*" *State v. Purtilo*, 11th Dist. Lake No. 2015-L-003, 2015-Ohio-2985, ¶5-17.

**{¶24}** In this case, the trial court made the R.C. 2929.14(C)(4) findings at the sentencing hearing and incorporated them in the judgment entry of sentence.

**{¶25}** At the sentencing hearing, the trial court heard from appellant who indicated she was sorry and had sympathy for the whole situation. The trial court also heard from four others that spoke on her behalf. A counselor stated that appellant attended parenting skill classes and learned a great deal. A Bible studies teacher for inmates said that appellant faithfully attended the classes, wanted to make amends, and be productive for the Lord. A jail minister and his wife believed appellant was sorry for her actions and wanted to turn her life around. In addition, appellant's brother wrote in a letter to the court that his sister was not a violent person and has a good heart. Defense counsel requested a minimum jail sentence.

6

{¶26} Thereafter, the trial court stated the following at the sentencing hearing:

{¶27} "Then the Court, for the record, wishes to recite that it has, in arriving at a sentence, considered the purposes and principals of felony sentencing generally. I have considered the recidivism and seriousness factors set forth in 2929.12, balanced those factors, considered all relevant factors, been guided by the degree and type of felony.

{¶28} "I have considered the plea agreement, the presentence investigation, inclusive of the prior history of criminal conduct, the burden on the State and local resources, the statements of the victims, the statements of counsel here today, the statements of the Defendant, and the other participants here today, and the entire record, which includes those briefs previously alluded to.

{¶29} "* * *

{¶30} "Some considerations that stand out to the Court in this case, and there are several.

{¶31} "First off, the second count, the count of Involuntary Manslaughter, first degree felony, causing another's death as the result of the commission or attempting to commit a felony on the part of the offender.

{¶32} "And in this case, the Court takes note that the felony that was the predicate offense here was not a minor one. But it was Kidnapping. It was a second degree felony, as has been pled to at Count 4.

{¶33} "So it was not something less onerous such as attempting to burglarize a home, or a low level drug offense felony. It was a major, major felony, Kidnapping that was ushered in by the object of killing Dan Ott.

7

**{¶34}** "And while you, Miss Stanifer, you weren't the trigger person in this instance, I recognize that. But you apparently were not, but you did participate in what appeared to be not just a spur of the moment commission of Involuntary Manslaughter that was conceived moments ahead of time.

**{¶35}** "But this was a studied effort. It appears to have been a deliberate style method that involves more than just one person, but involved another person or persons, one of whom is the likes of Chad South, which I am not punishing you for the misdeeds of Chad South.

**{¶36}** "But when you are with someone like Chad South, things happen. And the fact that this event was a more of a scripted one than a crime of passion, let's say, or even of short onset, makes for a more culpable act, a greater level of responsibility.

**{¶37}** "And the Obstruction of Justice, it did prolong the agony of these people, even though the first count is from December of 2014.

**{¶38}** "Still, to obstruct the investigation into a crime of this dimension is very serious. And you had, for Count 9, that took place almost in December of 2015. That was another opportunity to come clean, and you didn't come clean.

**{¶39}** "It took the dogged, persistent efforts of law enforcement to smoke this out and to get this out, and you never did really come clean.

**{¶40}** "And harkening back to May 6, of 2006 when Dan Ott was killed, one would have thought that that would be the end of this. I am done with this life. I am done with crime.

8

**{¶41}** "But no, it wasn't. It wasn't but about a year before you picked up charges for reckless operation of a motor vehicle and theft for stealing books from a college that I think was then dropped to a lesser offense that you pled to.

**{¶42}** "But then you went on for another eight years of more crimes of all kinds. I mean, starting in chronology from September of '07 until May of last year, you possessed criminal tools and stole, had a theft offense, a domestic assault, with a plea to a lesser included offense, followed by probation, which you violated, four public intoxications in the early part of 2009, followed then by a possession of marijuana, a DUI, evading arrest, followed by a violation of probation and issuance of a warrant, which is still pending in Macon County, Tennessee, passing bad checks, theft again, followed by probation and another violation.

**{¶43}** "This is all after '06, after Dan Ott was killed. Another theft, possession of methamphetamines and driving under suspension, manufacturing meth and related counts, possessing controlled substances and driving under suspension, another petty theft, another driving under suspension, driving under suspension or driving on a revoked license.

**{¶44}** "Now, I recognize [defense counsel's] argument that most, if not all of these offenses were driven by drug addiction. But there is still a measure of culpability.

**{¶45}** "And there are two outstanding warrants, both from Tennessee. And then stepping back to prior to May 6, 06, you had a record that antedated the killing of Dan Ott.

**{¶46}** "You had offenses, several offenses before that, including a juvenile record. So there is an extensive criminal record here which is hard to turn a blind eye to

9

when it comes to sentencing, despite the words of these good people, and they have merit.

{¶47} "They have taken up a cross on your behalf. That's commendable. They want to have faith in you.

{¶48} "But it is true, too, that this Court has to look at the whole picture, and it has to look, too, at the opportunities that you did have to rehab, and they were several. You had Project Care, the Elm Center with a follow-up and residential, the 28 day stay for heroin treatment in Tennessee.

{¶49} "Then the assessment at the Stewart Martin Behavioral Institute in Florida, followed by where you were when the detectives finally visited you in December of '14.

{¶50} "And you say you are on the road to better times. But all this time, the devastation to the Ott family and circle of friends, acquaintances, they were left to wonder what happened. Why? Why did it happen? Who are the perpetrators? Why would this occur, which had to be, the uncertainty, the who, what and why, had to be devastating to them.

{¶51} "So you made, you have made a lifetime of bad choices, punctuated by crime. And the intention you may have had throughout, you may have had good intentions, and you have expressed some here today.

{¶52} "But intentions don't count when you are in these circumstances.

{¶53} "* * *

{¶54} "So I do impose an 18 year sentence in this case as I find consecutive sentences are necessary to protect the public from future crimes and to punish the

offender, and that consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct, and the danger the offender poses to the public.

{¶55} "And further the Court finds that at least two of the multiple offenses were committed as one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as a part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶56} "And the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant." (Sentencing T.p. pp. 21-28).

{¶57} In addition, in its July 11, 2016 sentencing entry, the trial court stated:

{¶58} "Pursuant to R.C. 2929.14(C)(4), the Court finds that consecutive sentences are necessary to protect the public from future crime and to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and that pursuant to R.C. 2929.14(C)(4)(b), at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct, and pursuant to R.C. 2929.14(C)(4)(c), the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

11

**{¶59}** Appellant also takes issue with R.C. 2929.11 and 2929.12. Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12.

**{¶60}** R.C. 2929.11, "Overriding purposes of felony sentencing," states in part:

**{¶61}** "(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

**{¶62}** "(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

**{¶63}** The guidelines contained in R.C. 2929.12, "Factors to consider in felony sentencing," specifically at (E), state:

12

{¶64} "(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

{¶65} "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

{¶66} "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

{¶67} "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

{¶68} "(4) The offense was committed under circumstances not likely to recur.

{¶69} "(5) The offender shows genuine remorse for the offense."

{¶70} As addressed, the record reflects the trial court gave due deliberation to the relevant statutory considerations. The court considered the purposes and principles of felony sentencing under R.C. 2929.11, and balanced the seriousness and recidivism factors under R.C. 2929.12, as evidenced from the record. Appellant was sentenced to eight years for the first degree felony involuntary manslaughter offense; six years for the second degree kidnapping offense; and 18 months and 30 months for the third degree obstruction of justice offenses. Thus, the court sentenced appellant within the statutory ranges under R.C. 2929.14(A) ("(1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, ten, or eleven years. (2) For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years. * * * (3)(b) For a felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies, the prison term shall be nine, twelve, eighteen, twenty-

13

four, thirty, or thirty-six months.")  Further, the record reveals the court properly advised appellant regarding post-release control.   Therefore, the trial court complied with all applicable rules and statutes and, as a result, appellant's sentence is not clearly and convincingly contrary to law.

**{¶71}**  Appellant's first assignment of error is without merit.

**{¶72}**  In her second assignment of error, appellant contends the trial court erred in sentencing her to consecutive sentencing on allied offences of similar import. Specifically, appellant alleges that her sentences for involuntary manslaughter and kidnapping should have merged.

**{¶73}**  "Our review of an allied offenses question is de novo.  *State v. Williams,* Slip Opinion No. 2012–Ohio–5699, ¶12.  'R.C. 2941.25 "codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense."  *State v. Underwood,* 124 Ohio St.3d 365, * * *, 2010–Ohio–1, (* * *) ¶23.  At the heart of R.C. 2941.25 is the judicial doctrine of merger; merger is "the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime."  *State v. Botta,* 27 Ohio St.2d 196, 201 (* * *) (1971).' (Parallel citations omitted.)  *Williams* at ¶13.

**{¶74}**  "R.C. 2941.25 states:

**{¶75}**  "'(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶76}** "'(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.'

**{¶77}** "'To ensure compliance with both R.C. 2941.25 and the Double Jeopardy Clause, "a trial court is required to merge allied offenses of similar import at sentencing. Thus, when the issue of allied offenses is before the court, the question is not whether a particular sentence is justified, but whether the defendant may be sentenced upon all the offenses.' *Underwood* at ¶ 27.' *Williams, supra,* at ¶15." (Parallel citations omitted.) *State v. Edwards*, 11th Dist. Lake No. 2012-L-034, 2013-Ohio-1290, ¶49-53.

**{¶78}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Ohio Supreme Court clarified that two or more offenses may result in multiple convictions if any of the following is true: "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Id.* at ¶25. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

**{¶79}** The failure to merge allied offenses is plain error. *Underwood, supra,* at ¶31. Where a trial court fails to merge allied offenses, the appellate court must reverse the judgment of conviction and remand for a new sentencing hearing at which the state

15

must elect which allied offense it will pursue against the defendant. *State v. Whitfield,* 124 Ohio St.3d 319, 2010–Ohio–2, ¶25.

**{¶80}** In this case, the issue is whether involuntary manslaughter and kidnapping are allied offenses of similar import subject to merger for purposes of sentencing.

**{¶81}** R.C. 2903.04(A), "Involuntary manslaughter," states: "[n]o person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

**{¶82}** R.C. 2905.01(A)(2), "Kidnapping," provides: "[n]o person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (2) [t]o facilitate the commission of any felony or flight thereafter[.]"

**{¶83}** Implicit within every involuntary manslaughter case is not a kidnapping. In fact, it has been held that involuntary manslaughter and kidnapping are dissimilar offenses. *See State v. Gondor*, 11th Dist. Portage No. 90-P-2260, 1992 WL 366988, *4 (Dec. 11, 1992); *State v. Blunt*, 10th Dist. Franklin No. 88AP-933, 1989 WL 101050, *5 (Aug. 31, 1989).

**{¶84}** In this case, as stated, two victims, Daniel Ott and Mary Anne Ricker, were awoken in the early morning hours by Chad South who had broken into their Geauga County home in 2006. Mr. South bound both victims with duct tape. Mr. Ott managed to break his bonds and chased after Mr. South. Mr. South shot Mr. Ott in his chest. Mr. Ott later died. Mr. South immediately left the residence and jumped into the getaway car, where appellant was waiting.

16

**{¶85}** While in prison on an unrelated crime, Mr. South indicated he had been hired by Joseph Rosebrook to kill "Dan Ott." Mr. South commented, however, that he had killed the wrong "Dan Ott." Mr. South expressed worry over the murder for hire and worry about "the girl in the car," i.e., appellant. Detectives ultimately found appellant in Florida in 2014.

**{¶86}** Appellant initially denied any involvement in the murder for hire plot and claimed she did not know Mr. South. However, appellant later confessed that she was in the vehicle when Mr. South committed the murder and that she saw him come back to the car covered in blood. Appellant claimed she was on drugs at the time and that she accompanied Mr. South to what she believed was a burglary in order to maintain her drug habit.

**{¶87}** Appellant accompanied her co-defendant, Mr. South, to the victims' home to commit a crime. Under the theory of accomplice liability, anyone who is an accomplice to a crime shall be prosecuted and punished as if she were a principal offender. R.C. 2923.03(F). An accomplice is a person "acting with the kind of culpability required for the commission of an offense," and can act by "aid[ing] or abet[ting] another in committing the offense." R.C. 2923.03(A)(2).

**{¶88}** "Although a defendant may have a single goal, if he commits multiple offenses, or even the same offense, against different victims during the same course of conduct, the offenses are not allied and could be separately punished. *See, e.g.*, *State v. Mitchell,* 6th Dist. No. E–09–064, 2011-Ohio-973, 2011 WL 766547, ¶41; *State v. Snuffer,* 8th Dist. No. 96480, 2011-Ohio-6430, 2011 WL 6245774, ¶4." *State v. Swiergosz*, 197 Ohio App.3d 40, 2012-Ohio-830, ¶40 (6th Dist.). *See also State v.*

17

*Hardrick*, 11th Dist. Lake No. 2016-L-049, 2017-Ohio-623, ¶25 (holding that because there were two separate victims, pursuant to *Ruff*, the trial court was without power to merge the offenses.)

**{¶89}** Notwithstanding accomplice liability, appellant now argues on appeal that the trial court had to consider if involuntary manslaughter and kidnapping were allied offenses of similar import prior to imposing sentence. In support of her allied offenses argument, appellant stresses that she pleaded guilty to only one of the kidnapping counts involving only one victim, Ott.

**{¶90}** At the plea hearing, the following exchange took place:

**{¶91}** "THE COURT: So you understand the pleas to which you are, or I mean the counts, the charges to which you are pleading guilty to?

**{¶92}** "MS. STANIFER: Yes, your Honor.

**{¶93}** "THE COURT: And once again, that is the stipulated lesser included offense of Count 2, the Involuntary Manslaughter, a first degree felony, the merged Counts 4 and 5, the Kidnapping offense, to a sole count of Count 4 with two victims comprising both the victims with the merging of Counts 4 and 5, that being a felony of the second degree, and the two charges of Obstructing Justice, felonies of the third degree?

**{¶94}** "MS. STANIFER: Yes, sir." (May 9, 2016 Plea Hearing T.p. 7-8).

**{¶95}** Thus, the foregoing adequately reflects and encompasses both victims and the joining or amendment of the indictment regarding counts four and five by the trial court.

**{¶96}** In addition, we stress that it has been held that involuntary manslaughter and kidnapping are dissimilar offenses. *See Gondor*, *supra,* at *4; *Blunt*, *supra,* at *5. The Ohio Supreme Court has clarified that two or more offenses may result in multiple convictions if the offenses are dissimilar in import. *Ruff, supra,* at ¶25. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable. *Id.* at paragraph two of the syllabus.

**{¶97}** Accordingly, the trial court did not err in imposing separate sentences in this case. *See generally State v. Purdy*, 11th Dist. Lake No. 2015-L-054, 2016-Ohio-1302, ¶29.

**{¶98}** Appellant's second assignment of error is without merit.

**{¶99}** For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Geauga County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.