[Cite as *State v. Eitzman*, 2022-Ohio-574.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

GARY L. EITZMAN,

    DEFENDANT-APPELLANT.

CASE NO. 7-21-03

O P I N I O N

Appeal from Henry County Common Pleas Court
Trial Court No. 19 CR 0177

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:  February 28, 2022**

APPEARANCES:

    *Nathan VanDenBerghe* **for Appellant**

    *Gwen Howe-Gebers* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Gary L. Eitzman ("Eitzman") appeals the judgment of the Henry County Court of Common Pleas, arguing that his conviction is not supported by sufficient evidence; that his conviction is against the manifest weight of the evidence; that the trial court committed an error at sentencing; and that the Reagan Tokes Law is unconstitutional. For the reasons set forth below, the judgment of the trial court is affirmed in part and reversed in part.

*Facts and Procedural History*

{¶2} On October 20, 2019, Grant Adkins ("Adkins") was going eastbound on State Route 65 in his pickup truck. Tr. 8. As he was driving, he saw a blue SUV in his mirror that was approaching his vehicle very quickly from behind. Tr. 9, 10. Adkins testified that the SUV "was right on my bumper" and "was so close I could see the person driving in my rearview mirror, I could see their face * * *." Tr. 9. At this time, there was a car in front of Adkins. Tr. 32, 43. He also did not believe that he had space to pull over on the right side of the road to let this SUV pass him. Tr. 29. For this reason, he looked to see if there was any oncoming traffic in the left lane of the roadway. Tr. 26.

{¶3} After he determined that there was no oncoming traffic, Adkins began pulling into the left lane to allow the SUV to pass him. Tr. 10. However, Adkins said, "as soon as I get over and start to slow down, I felt like I was rammed off the road. I had no control, my airbags deployed, I didn't know what was going on, next

thing I knew I am through the ditch and out in the field." Tr. 10. Adkins then got back onto the roadway and passed the car that had been in front of him at the time of the collision. Tr. 10-11, 49, 62-63. He then pulled into a driveway and waved down the driver of that car, Lora Pittman ("Pittman"). Tr. 32, 49, 63.

{¶4} Pittman pulled into the driveway and let Adkins use her cell phone to call 9-1-1. Tr. 32-33, 49. While Adkins was on the phone, the blue SUV drove past Pittman and Adkins. Tr. 11, 37, 63. At this point, Adkins "was able to get the plate number" of the blue SUV. Tr. 11. He testified that he did not know where the blue SUV had been in between the collision and passing him while he was standing on the driveway. Tr. 44-45.

{¶5} Deputy Joshua Cluley ("Deputy Cluley"), who worked for the Henry County Sheriff's Office, responded to Adkins's 9-1-1 call. Tr. 67-68. After he arrived at the scene, he took statements from Adkins and Pittman about the incident. Tr. 94, 101. He also took several pictures of the skid marks on the roadway. Ex. 2. Adkins gave Deputy Cluley the license plate number of the blue SUV. Tr. 70. This license plate number was registered to Eitzman. Tr. 70. Deputy Cluley went to the address listed on his vehicle registration, but "it appeared that no one was currently living at that residence." Tr. 71.

{¶6} However, Deputy Mark Glanz ("Deputy Glanz") was later brought into this investigation and discovered the address where Eitzman was living. Tr. 118. When he went to this address, Eitzman's girlfriend was home. Tr. 119. Behind this

house was an attached garage. Tr. 119. Eitzman's girlfriend opened the garage door for Deputy Glanz. Tr. 119-120. Inside was a blue SUV. Tr. 119. Ex. 3. Deputy Glanz observed that the vehicle had a "[h]eavily damaged front corner * * *." Tr. 121. Further, he also saw that the bumper, front tire, and driver's side door of the vehicle were damaged. Tr. 122.

{¶7} On January 29, 2020, Eitzman was indicted on one count of felonious assault with a deadly weapon in violation of R.C. 2903.11(A)(2), a felony of the second degree. Doc. 2. On March 2, 2021, a bench trial was held on the charge against Eitzman. Doc. 43. After considering the evidence presented, the trial court found Eitzman guilty of the charge of felonious assault with a deadly weapon. Doc. 43. At a sentencing hearing on May 25, 2021, the trial court, pursuant to the Reagan Tokes Law, ordered Eitzman to serve an indefinite prison sentence with a four-year minimum term and a six-year maximum term. Sentencing Tr. 11. The trial court issued its judgment entry of sentencing on May 26, 2021. Doc. 46.

{¶8} Eitzman filed his notice of appeal on June 11, 2021. Doc. 49. On appeal, he raises the following five assignments of error:

**First Assignment of Error**

**The evidence presented at Appellant's trial was insufficient to support the conviction.**

**Second Assignment of Error**

**The Court's finding of guilty was against the manifest weight of the evidence.**

**Third Assignment of Error**

**The Trial Court erred when it stated at the Sentencing Hearing that Appellant's sentence is a mandatory sentence and that Appellant is not eligible for judicial release.**

**Fourth Assignment of Error**

**The Trial Court erred when it stated in its Sentencing Journal Entry that Appellant is not eligible for earned credit under R.C. 2967.193.**

**Fifth Assignment of Error**

**The Reagan Tokes Act is an unconstitutional Violation of Due Process.**

*First Assignment of Error*

{¶9} Eitzman argues that his conviction for felonious assault with a deadly weapon was not supported by sufficient evidence.

Legal Standard

{¶10} A challenge to the sufficiency of the evidence supporting a conviction "is a question of law and a 'test of adequacy rather than credibility or weight of the evidence.'" *State v. Beaver*, 3d Dist. Marion No. 9-17-37, 2018-Ohio-2438, ¶ 40, quoting *State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19. "The sufficiency-of-the-evidence analysis addresses the question of whether adequate evidence was produced for the case to be considered by the trier of fact and, thus, whether the evidence was 'legally sufficient to support the verdict * * *.'" *State v. Luebrecht*, 3d Dist. Putnam No. 12-18-02, 2019-Ohio-1573, ¶ 36, quoting *State v.*

*Worthington*, 3d Dist. Hardin No. 6-15-04, 2016-Ohio-530, ¶ 12. On appeal, the applicable standard

> **is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.**

*State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 27, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 62 (3d Dist.).

{¶11} To establish a conviction for the offense of felonious assault in violation of R.C. 2903.11(A)(2), the State must prove that the offender "[1] knowingly * * * [2] cause[d] or attempt[ed] to cause physical harm to another * * * [3] by means of a deadly weapon or dangerous ordinance." R.C. 2903.11(A)(2).

> **A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.**

R.C. 2901.22(B). R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). *See* R.C. 2903.11(E)(1). R.C. 2903.11(D)(4) indicates that a motor vehicle can be used as a deadly weapon. R.C. 2903.11(D)(4). *See* R.C. 2903.11(E)(2).

Legal Analysis

{¶12} On appeal, Eitzman argues that the State failed to establish that he knowingly attempted to cause physical harm to Adkins. At trial, Adkins said,

-6-

> **I looked in my mirror, I saw it [the SUV] coming up and then the next thing I knew it was right on my bumper and there was [a] short period of time there where it would back off, come back up, back off, come back up.**

Tr. 9. He testified that the blue SUV was so close to his pickup truck that he could see the driver's face in his mirror. Tr. 9. The driver "was throwing his hands up in the air, shaking, it seems like he was in a rush." Tr. 11, 38. He then said,

> **It got to a point where I wasn't very comfortable having a car this close to me, I thought something was going to happen, there was someone in front of me, I was following somebody, I had nowhere to go, so, there weren't any cars coming so I wanted to just get off the road or get somewhere where I could let this car by and get on with our day, so I got into the oncoming lane * * *.**

Tr. 9. Adkins explained that there was not enough room for him to pull off on the right side of the road to let the blue SUV pass him. Tr. 9-10, 29.

{¶13} While he did not see the blue SUV at the time of the collision, Adkins said, "[i]t was a pretty big impact, I mean, it was intense, it was * * * hard." Tr. 39. He indicated that the blue SUV did not merely "swipe" his vehicle. Tr. 39-40. He stated that the collision was forceful enough to deploy his airbags and push him off the roadway. Tr. 10. Adkins further testified that he had been driving at roughly fifty-five miles per hour shortly before the collision, though he was not sure how fast he was going at the time of the collision. Tr. 16-17, 27. Using several pictures introduced by the State at trial, he also identified Eitzman's vehicle as the blue SUV that struck his pickup truck. Tr. 15. Ex. 3.

{¶14} At trial, the prosecutor inquired into what Pittman had observed in her rearview mirror:

> **Ms. Pittman: I was being followed by a pickup truck, I thought it was a little close but not too concerning, and then as the road curves I see there was an SUV \* \* \* that was even closer to him than he [the pickup] was to me and I kind of kept an eye on it.**
>
> **\* \* \***
>
> **As we proceeded closer to the Damascus bridge, I saw the truck that was right behind me, he pulled over into the left lane, oncoming traffic, and I thought, well that's a little dangerous, you know he could get hit.**
>
> **[Prosecutor]: Did you see any oncoming traffic?**
>
> **Ms. Pittman: No I didn't, but the vehicle behind him kind of sped up like he was going to pass, but then he made a turn, a left turn into the truck.**
>
> **[Prosecutor]: Okay, so it wasn't just a swipe, you describe it as a left turn into the truck?**
>
> **Ms. Pittman: Yes, because it was a sharp enough turn, I thought maybe the vehicle, which turned out to be a SUV \* \* \*, could have possibly rolled over, to me I thought it was that sharp.**

Tr. 47-48. The State introduced several pictures of Eitzman's blue SUV at trial. Ex. 3. Pittman identified the blue SUV in these pictures as the vehicle she saw collide with Adkin's pickup truck. Tr. 50.

{¶15} Deputy Cluley testified that Eitzman never contacted the police to report that he had been involved in a collision. Tr. 71. Rather, Deputy Glanz's testimony indicates that he had to conduct an investigation to locate Eitzman. Tr.

117-119. He stated that, once he located Eitzman's residence, the blue SUV was not "out in the open" but was inside "an attached garage * * * at the back side of the residence * * * with the garage door closed." Tr. 119.

{¶16} Further, Deputy Glanz noted that "the passenger side door of Mr. Adkins['s] vehicle * * * ha[d] a substantial caving in on the door." Tr. 128. Having examined the damage done to both of these vehicles, he then stated the following:

> **My experience with handling traffic cases is that you don't get that type of a caving in unless it is more of a direct impact, if it was more of a side swipe there would be straight damage all the way down the side, I believe by looking at that and Mr. Eitzman's vehicle, the front driver side corner * * * of Mr. Eitzman's vehicle came into the passenger door of Mr. Adkins.**

Tr. 128-129. The State introduced pictures of two sets of skid marks on the roadway at the area where the collision occurred. Ex. 2. Deputy Glanz testified that the pair of skid marks on the right side of the roadway, which would have been made by the blue SUV, did not appear to go gradually into the left lane towards the other set of skid marks. Tr. 134.

{¶17} Thus, the State produced evidence that Eitzman appeared frustrated while he was driving; turned his vehicle directly into Adkins's pickup truck; and was driving his motor vehicle at a relatively high rate of speed at the time of the collision. Having reviewed the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could determine that Eitzman knowingly attempted to cause physical harm to Adkins. Eitzman has not demonstrated that his

conviction is not supported by sufficient evidence. For this reason, his first assignment of error is overruled.

*Second Assignment of Error*

{¶18} Eitzman argues that his conviction for felonious assault is against the manifest weight of the evidence.

Legal Standard

{¶19} "When 'deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion.'" *Brown*, 2018-Ohio-899, *supra*, at ¶ 8, quoting *State v. Blanton*, 121 Ohio App.3d 162, 169, 699 N.E.2d 136 (3d Dist. 1997). "In a manifest weight analysis, 'the appellate court sits as a "thirteenth juror" * * *.'" *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, 546-547 (1997). Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387.

{¶20} "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the

witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "[I]t is well established that the * * * credibility of the witnesses [is] primarily a matter for the trier of fact." *State v. Gervin*, 2016-Ohio-8399, 79 N.E.3d 59, ¶ 142 (3d Dist.), quoting *State v. Clark*, 101 Ohio App.3d 389, 409, 655 N.E.2d 795 (8th Dist. 1995). "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

Legal Analysis

{¶21} On cross-examination at trial, Adkins could not remember if he had activated his turn signal when he began to change lanes. Tr. 30. He also stated that he did not see the blue SUV when the collision occurred because he was looking in the other direction. Tr. 26, 30, 35. When shown pictures of the skid marks in the roadway, he affirmed that it appeared that Eitzman drove in a "sweeping motion from the right" but said that he did not believe that the collision occurred because he (Adkins) had moved into the left lane on the roadway. Tr. 27, 29.

{¶22} He also affirmed that he had not interacted with Eitzman previously; that he could not recall any other noteworthy occurrence leading up to the collision; and that he did not know why someone would try to intentionally hurt him. Tr. 18, 34-35. However, he had informed the 9-1-1 dispatcher that he had been run off of

-11-

the road intentionally. Tr. 34. Finally, he said that he could not explain why the blue SUV went past the driveway where he was standing several minutes after the collision because he did not see where the blue SUV had gone after the collision had occurred. Tr. 44-45.

{¶23} When questioning Pittman, defense counsel noted that the rearview window of Adkins's pickup truck was tinted. Tr. 52. He then inquired into how she could see the blue SUV behind Adkins's vehicle. Tr. 53-55. She explained that she went through several curves in the roadway that allowed her to see that two vehicles were behind her and that these two vehicles were close together. Tr. 55. She further stated that Adkins "was already in the other [left] lane" when the collision occurred, though she admitted that the "tail end and back tire" of Adkins's vehicle may not have been entirely in the left lane at that point. Tr. 62.

{¶24} Pittman also testified that, after the collision, she pulled into a driveway next to Adkins. Tr. 63. She stated that Adkins did not indicate that he was injured in the collision but noted that he looked "shooken up." Tr. 64. While they were standing on the driveway, she observed the blue SUV drive past them on the roadway but said the vehicle was not going particularly fast. Tr. 63-64. Pittman testified that she had never met Eitzman or Adkins prior to this incident. Tr. 65.

{¶25} Deputy Cluley testified that he spent thirty-eight minutes at the scene of the accident, investigating the incident and compiling information for his crash report. Tr. 110. Ex. A. His report stated that Adkins's vehicle was struck at an

angle rather than having been sideswiped; that Adkins committed a lane violation; and that this lane violation was part of a sequence of events that contributed to the collision. Tr. 83-84, 89, 91. Ex. A. However, the narrative portion of his report also stated that Adkins indicated that the blue SUV "intentionally rammed" his vehicle. Tr. 94. On redirect, he testified that nothing in his investigation indicated that Pittman was not telling the truth about the incident. Tr. 113.

{¶26} Deputy Glanz admitted that he did not know where Eitzman's vehicle had been in between the incident and the time at which he located the vehicle. Tr. 132-133. He also testified that he does not have training in accident reconstruction but did have seventeen years of experience in responding to traffic accidents. Tr. 135, 146, 151. He stated that, in his investigation, he did not uncover any preexisting incident that would have motivated Eitzman to ram Adkins's vehicle. Tr. 144. Deputy Glanz further testified that the damage to the vehicles, the skid marks, Pittman's statements, and Adkins's statements all fit together. Tr. 128, 149.

{¶27} Having reviewed the evidence in the record on the basis of its weight and credibility, we conclude that Eitzman has not demonstrated that his conviction for felonious assault is against the manifest weight of the evidence. For this reason, his second assignment of error is overruled.

*Third Assignment of Error*

**{¶28}** Eitzman argues that the trial court erred by stating, at his sentencing hearing, that he had a mandatory sentence and would not be eligible for judicial release.

Legal Standard

**{¶29}** As a general matter, trial courts have broad discretion in imposing sentences. *State v. Purvis*, 3d Dist. Marion No. 9-20-29, 2021-Ohio-265, ¶ 9. However, "[w]hen reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2)." *State v. Delong*, 2d Dist. Clark Nos. 2021-CA-32, 2021-CA-33, 2022-Ohio-207, ¶ 8, quoting *State v. Houston*, 2d Dist. Montgomery No. 29114, 2021-Ohio-3374, ¶ 6.

> **If the defendant establishes by clear and convincing evidence that his or her sentence is '(1) contrary to law and/or (2) unsupported by the record,' an appellate court has the authority, pursuant to R.C. 2953.08(G)(2), 'to increase, reduce, or otherwise modify a sentence * * *.'**

*State v. Risner*, 3d Dist. Wyandot No. 16-20-05, 2021-Ohio-342, ¶ 39, quoting *State v. McGowan*, 147 Ohio St.3d 166, 2016-Ohio-2971, 62 N.E.3d 178, ¶ 1.

> **Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.**

*State v. Taflinger*, 3d Dist. Logan No. 8-17-20, 2018-Ohio-456, ¶ 12, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus (1954).

{¶30} Further, "the axiomatic rule is that a court speaks through its journal entries." *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 12. "Accordingly, it is the trial court's judgment entry and not the oral pronouncement of a sentence at a sentencing hearing (or a resentencing hearing) that is 'the effective instrument for sentencing a defendant.'" *State v. Roscoe*, 8th Dist. Cuyahoga No. 102191, 2015-Ohio-3876, ¶ 7, quoting *State v. Rodriguez-Baron*, 7th Dist. Mahoning No. 10-MA-176, 2012-Ohio-1473, ¶ 13. *See State v. Brown*, 3d Dist. Allen No. 1-06-66, 2007-Ohio-1761, ¶ 3 ("A trial court speaks only through its journal entries and not by oral pronouncement.").

{¶31} "[I]f the journal entry and the judge's comments conflict, the journal entry controls." *State v. Potter*, 6th Dist. Fulton No. F-21-002, 2021-Ohio-3502, ¶ 13, quoting *State v. Hankins*, 89 Ohio App.3d 567, 569, 626 N.E.2d 965 (3d Dist. 1993). *See also State v. Swiergosz*, 197 Ohio App.3d 40, 2012-Ohio-830, 965 N.E.2d 1070, ¶ 49 (6th Dist.) (concluding that "verbal miscues or misstatements in open court during sentencing are harmless").

### Legal Analysis

{¶32} At the sentencing hearing, the trial court stated it would impose an indefinite prison sentence on Eitzman with a four-year minimum term and a six-

year maximum term. Sentencing Tr. 13. The trial court then stated that Eitzman "would not be eligible for judicial release within the four-year term because that is a mandatory sentence." *Id*. While Eitzman did not object to this statement at the sentencing hearing, he argues on appeal that the trial court erroneously stated that this four-year minimum prison term was mandatory.

**{¶33}** However, in its judgment entry of sentencing, the trial court did not impose a mandatory prison term on Eitzman or state that he was ineligible for judicial release. Doc. 46. Because the trial court did not impose a mandatory prison term, Eitzman has not identified any prejudicial error in this assignment of error. *See State v. Smith*, 1st Dist. Hamilton Nos. C-080712, C-090505, 2009-Ohio-6932, ¶ 38; *Roscoe, supra*, at ¶ 9; *State v. Casiano*, 6th Dist. Wood No. WD-09-009, 2010-Ohio-3528, ¶ 28 ("Because the trial court's misstatement concerning judicial release did not prejudice or affect the outcome of this case, it is harmless error."); *State v. Draughton*, 10th Dist. Franklin Nos. 11AP-703, 11AP-995, 2012-Ohio-1917, ¶ 30. Because Eitzman has not demonstrated that his sentence is clearly and convincingly contrary to law with this argument, his third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶34}** Eitzman argues that the sentencing entry incorrectly states that he is not eligible for earned credit under R.C. 2967.193.

Legal Standard

**{¶35}** As an initial matter, we reincorporate the legal standard for appellate challenges to a sentence as set forth in the third assignment of error. Further, R.C. 2967.193 provides opportunities for inmates to earn credit towards the satisfaction of his or her prison term "for participation in certain programs." R.C. 2967.193.

> **Under R.C. 2967.193, the department of rehabilitation and correction is charged with determining the amount of credit earned and awarding that credit to the prisoner. Likewise, the statute authorizes the department to deny the prisoner the right to earn credit or withdraw credits previously earned if it determines the prisoner has violated prison rules.**

*State v. Livingston*, 2014-Ohio-1637, 9 N.E.3d 1117, ¶ 7 (1st Dist.). "[T]here is nothing in R.C. 2967.193 or elsewhere in the law that authorizes a court to limit an offender's ability to earn days of credit." *Id*. at ¶ 9.

Legal Analysis

**{¶36}** R.C. 2967.193(A)(1) and R.C. 2967.193(A)(2) set forth earned-credit opportunities for inmates. An inmate is ineligible to earn credit under R.C. 2967.193(A)(2) if he or she "is serving a * * * a prison term for an offense of violence * * *." R.C. 2967.193(A)(2). In this case, Eitzman received a prison term for a conviction for felonious assault, which is listed as an offense of violence in R.C. 2901.01(A)(9)(a). Thus, Eitzman is statutorily ineligible to earn credit under R.C. 2967.193(A)(2).

{¶37} However, R.C. 2967.193(A)(1) does not contain the same eligibility requirements as R.C. 2967.193(A)(2). The wording of R.C. 2967.193(A)(1) does not disqualify all inmates who are serving a sentence for an offense of violence from the earned credit opportunities contained therein. Rather, an inmate is statutorily ineligible for earned credit under R.C. 2967.193(A)(1) if he or she has a type of sentence or conviction that is listed in R.C. 2967.193(C). Eitzman does not have a sentence or conviction of a type that is listed in R.C. 2967.193(C).

{¶38} Further, the number of days of credit that an eligible inmate can earn under R.C. 2967.193(A)(1) is set forth in R.C. 2967.193(D) and is based upon the offense for which the inmate received a prison term. R.C. 2967.193(D) sets forth the amount of credit that an inmate may earn if the most serious offense for which he or she is confined is a conviction for second-degree felonious assault. R.C. 2967.193(D)(1)(a). In this case, Eitzman was confined for one conviction for second-degree felonious assault. Doc. 46. Thus, as the State concedes in its brief, Eitzman is not statutorily ineligible to earn the amount of credit that is set forth in R.C. 2967.193(D)(1)(a). Appellee's Brief, 15.

{¶39} However, the trial court's judgment entry of sentencing states that Eitzman "is not eligible for earned credit per Revised Code 2967.193 * * *". Doc. 46. While Eitzman does not meet the eligibility requirements for earned credit under R.C. 2967.193(A)(2), he is not statutorily ineligible for earned credit under R.C. 2967.193(A)(1). Thus, the portion of the sentencing entry challenged by

Eitzman on appeal does not reflect the statutory eligibility standards for earned credit as set forth in R.C. 2967.193 and is in need of clarification.

**{¶40}** In conclusion, the trial court opted to include a statement in its judgment entry about Etizman's eligibility for earned credit under R.C. 2967.193. However, the statement that the trial court chose to include about earned credit under 2967.193 is inconsistent with the statutory standards set forth in that provision. Doc. 46. *See* R.C. 2967.193(A)(1), (C), (D)(1)(a). Since this statement is clearly and convincingly contrary to law, we "vacate this portion of his sentence and remand this matter to the trial court for the limited purpose of correcting the judgment entry. *Livingston, supra*, at ¶ 10. Accordingly, Eitzman's fourth assignment of error is sustained.

*Fifth Assignment of Error*

**{¶41}** Eitzman asserts that the Reagan Tokes Law is unconstitutional, arguing that this provision violates his rights to due process.

Legal Standard

**{¶42}** Under Crim.R. 52(A), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B).

> **"In order to find plain error under Crim.R. 52(B), there must be an error, the error must be an 'obvious' defect in the trial proceedings, and the error must have affected 'substantial rights.'" *State v. Bowsher*, 3d Dist. Union No. 14-07-32, 2009-Ohio-6524, ¶ 12, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759**

> **N.E.2d 1240 (2002). 'The standard for plain error is whether, but for the error, the outcome of the proceeding clearly would have been otherwise.'** *State v. Hornbeck*, **155 Ohio App.3d 571, 2003-Ohio-6897, 802 N.E.2d 184, ¶ 16 (2d Dist.), citing** *State v. Long*, **53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Notice of plain error is taken "only to 'prevent a manifest miscarriage of justice.'"** *State v. Davis*, **3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 23, quoting** *Long, supra*, **at paragraph three of the syllabus.**

*Taflinger, supra*, at ¶ 17. Under Crim.R. 52(B), "the *defendant* bears the burden of demonstrating that a plain error affected his substantial rights." (Emphasis sic.) *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14.

{¶43} Further, "[i]n order to be justiciable, a controversy must be ripe for review." *State v. Loving*, 180 Ohio App.3d 424, 2009-Ohio-15, 905 N.E.2d 1234, ¶ 4, quoting *Keller v. Columbus*, 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964, ¶ 26.

> **Ripeness 'is peculiarly a question of timing.'** *Regional Rail Reorganization Act Cases* **(1974), 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320, 351. The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *."** *Abbott Laboratories v. Gardner* **(1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691 [(*reversed on other grounds in Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977))]. * * *.**
>
> **"The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief [has] simply**

> **not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff."** Comment, Mootness and Ripeness: The Postman Always Rings Twice (1965), 65 Colum. L.Rev. 867, 876.

*State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89, 1998-Ohio-366, 694 N.E.2d 459, 460 (1998). "A claim is not ripe for our consideration if it rests on contingent future events that may not occur as anticipated or may never occur at all." *Loving* at ¶ 4, citing *Texas v. U.S.*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998).

## Legal Analysis

{¶44} On appeal, Eitzman argues that the Reagan Tokes Law does not contain adequate statutory protections for the due process rights of subject offenders. He concedes that he did not challenge the constitutionality of the Reagan Tokes Law before the trial court and that the plain error standard of review, therefore, governs this assignment of error. *See State v. Silvas*, 3d Dist. Shelby No. 17-21-03, 2021-Ohio-4473, ¶ 43. He also acknowledges that this Court has previously rejected these exact same arguments but asks that this Court reconsider its prior precedents in *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 12 and *State v. Hacker*, 2020-Ohio-5048, 161 N.E.3d 112, ¶ 22-23 (3d Dist.).[1]

---

[1] We are aware that the Fourth, Fifth, Sixth, and Eleventh Districts found that separation of powers arguments and due process arguments that question the constitutionality of the Reagan Tokes Law are not yet ripe for review. *See State v. Ramey*, 4th Dist. Washington Nos. 20CA1 and 20CA2, 2020-Ohio-6733, ¶ 22; *State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, ¶ 5, 12-13; *State v. Velliquette*, 2020-Ohio-4855, 160 N.E.3d 414, ¶ 30 (6th Dist.); *State v. Lavean*, 11th Dist. Lake No. 2020-L-045, 2021-Ohio-1456, ¶ 12. We are also aware that, on December 28, 2020, the Supreme Court of Ohio accepted a case to

{¶45} In *Hacker*, the defendant-appellant raised a facial challenge to the Reagan Tokes Law, arguing that this provision did not contain adequate due process protections. *Hacker, supra*, at ¶ 18. However, we concluded that Hacker had not demonstrated that the Reagan Tokes Law was unconstitutional on its face in the aforementioned regards. *Id*. at ¶ 23. *See State v. Kepling*, 3d Dist. Hancock No. 5-20-23, 2020-Ohio-6888, ¶ 18; *Crawford, supra*, at ¶ 11.

{¶46} In *Crawford*, the defendant-appellant argued that his due process rights might not be adequately protected "in the event that the [Ohio Department of Rehabilitation and Corrections] ODRC acts to keep him beyond his presumptive release date." *Crawford, supra*, at ¶ 13. We noted that, at the time of the appeal, we could not determine if Crawford would ever face such action from the ODRC. *Id*. Because this argument was predicated "on contingent future events that may not occur as anticipated or may never occur at all," we concluded that this challenge was not yet ripe for review. *Id*. at ¶ 12-13, quoting *Loving, supra*, at ¶ 4. *See also Kepling, supra*, at ¶ 13-15.

{¶47} At this time, we decline to revisit our precedents in *Hacker* and *Crawford*. *Hacker, supra*, at ¶ 23; *Crawford, supra*, at ¶ 12-13. We apply the holdings of these prior decisions to the due process arguments raised by Eitzman

---

determine whether the constitutionality of the Reagan Tokes Law is ripe for review. *State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150.

herein. For this reason, we conclude that Eitzman has not carried the burden of demonstrating plain error. Accordingly, his fifth assignment of error is overruled.

*Conclusion*

{¶48} Having found no error prejudicial to the appellant in the particulars assigned and argued in the first, second, third, and fifth assignments of error, the judgment of Henry County Court of Common Pleas is affirmed as to these issues.

{¶49} Having found error prejudicial to the appellant in the particulars assigned and argued in the fourth assignment of error, the judgment of the Henry County Court of Common Pleas is reversed as to these issues.

{¶50} Accordingly, this case is remanded to the trial court for further proceedings that are consistent with this opinion.

***Judgment Affirmed in Part***
***Reversed in Part***
***And Cause Remanded***

**MILLER and SHAW, J.J., concur.**

**/hls**